UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA RENEE BROWN,

        Plaintiff,                          Civil Action No. 15-12494
                                               Honorable Stephen J. Murphy, III
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 13]**

Plaintiff Renee Brown ("Brown") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge ("ALJ") erred by failing to re-contact one of Brown's treating physicians after finding her treatment notes "largely illegible" and subsequently affording "little weight" to that doctor's exertional RFC assessment. As such, the ALJ's conclusion that Brown is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [16] be DENIED, Brown's motion for summary judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to

the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED back to the ALJ for further proceedings consistent with this Report and Recommendation.

## II. REPORT

### A. Procedural History

This matter has a protracted procedural history. On July 18, 2007, Brown filed an application for SSI alleging a disability onset date of March 1, 2002. (Tr. 83-85). The claim was initially denied on September 19, 2007. (Tr. 74). Thereafter, Brown filed a timely request for an administrative hearing, which was held on July 20, 2009, before ALJ John Dodson. (Tr. 54-73). Brown, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Christian R. Barrett. (*Id.*). In a written decision dated December 23, 2009, the ALJ determined that Brown is not disabled. (Tr. 15-24). On October 19, 2010, the Appeals Council denied review. (Tr. 585-89). Brown filed for judicial review of the final decision on December 10, 2010. (*Brown v. Comm'r of Soc. Sec.*, 10-14906, Doc. #1). The parties then filed cross-motions for summary judgment. (*Id.*, Docs. #9-10).

On February 17, 2012, this Court issued a Report and Recommendation to deny the Commissioner's motion for summary judgment, to grant Brown's motion to the extent it sought remand, and to remand the matter back to the ALJ for further proceedings. (Tr. 626). The Court found that the ALJ erred by failing to consider the disability function report of Brown's treating physician, which materially impacted the ALJ's "view of Brown's credibility, his RFC assessment, the hypotheticals he pose[d] to the VE, the number of jobs available to Brown, and perhaps [Brown's] entitlement to benefits." (*Id.*). The Commissioner did not file any objections to the Report and Recommendation and United States District Judge Stephen J. Murphy, III

adopted the Court's recommendation (Tr. 628-29) and issued a judgment on March 8, 2012, remanding the matter. (Tr. 630).

On December 10, 2010, while Brown's initial application was pending, she protectively filed another application for SSI alleging an amended disability onset date of December 1, 2010. (Tr. 590). The claim was initially denied on March 2, 2011. (Tr. 596-97). Thereafter, Brown filed a timely request for an administrative hearing, which was held on February 8, 2012, before ALJ Mary S. Connolly. (Tr. 519-46). Brown, who was again represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Joanne M. Pfeffer. (*Id.*). In a written decision dated March 30, 2012, the ALJ determined that Brown is not disabled. (Tr. 601-09). Brown filed a request for review of this decision to the Appeals Council on May 8, 2012, which request was granted. (Tr. 633).

On November 30, 2012, the Appeals Council issued an order: vacating both ALJ John Dodson's decision dated December 23, 2009 and ALJ Mary S. Connolly's decision dated March 30, 2012; consolidating both cases; and remanding the consolidated matter with specific instructions that the ALJ: (1) reevaluate the prior Step-Two determinations by "obtain[ing] additional evidence concerning all of the claimant's physical and mental impairments"; (2) evaluate the severity of Brown's mental impairments in each functional area (activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation); (3) obtain additional evidence from medical experts to clarify the nature and severity of Brown's physical and mental impairments where warranted; (4) reassess Brown's maximum residual functional capacity ("RFC") after considering the disability function report of Brown's treating physician; support any RFC findings with specific citations to the medical record; and (5) obtain additional evidence from the vocational expert to ascertain how the

assessed limitations would affect Brown's occupational base. (Tr. 633-36; 640-43).

Pursuant to the Appeals Council's remand order, another hearing was held on April 9, 2013, before ALJ Mary S. Connolly. (Tr. 495-518). Brown, who was again represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Melody L. Henry. (*Id.*). In a written decision dated June 13, 2013, the ALJ determined that Brown is not disabled. (Tr. 471-86). On June 23, 2015, the Appeals Council denied review. (Tr. 452-56). Brown filed for judicial review of the final decision on July 14, 2015. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work,

4

> benefits are denied without further analysis.
>
> Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Disability and Function Reports*

In light of this case's procedural posture, the Court incorporates by reference its summary of Brown's disability and function reports contained in the Court's February 7, 2012 Report and Recommendation. (Tr. 86-119, 617).

*2.     Brown's Testimony*

At the outset of the April 9, 2013 hearing, Brown's attorney amended the alleged onset date to July 18, 2007. (Tr. 498). Brown then testified that she recently started taking Roxicodone for pain in her back and legs. (Tr. 501). She also began using a roller-walker in 2011 due to dizziness caused by her medications. (*Id.*). Brown stated that she lives in a one-story residence with a basement that she is unable to access. (Tr. 502). She indicated that her physician prescribed an inhaler for her asthma condition and Claritin to control her seasonal allergies although they are often ineffective. (Tr. 504). She has never treated with a mental health professional and has never been prescribed anti-depressants. (*Id.*).

5

Brown reported that she is not able to walk more than a half a block with the use of an assistive device and she cannot walk at all on her own. (Tr. 505). She has difficulty standing because of pain in her heal, which she attributed to an automobile accident that occurred in 1996 or 1997. (Tr. 506; *see* 114, 173). As a result, Brown had to maintain her foot in a slightly elevated position in order to continue working. (*Id.*). She suffers from severe pain in her right leg and back. (Tr. 509). She testified that she is able to stand for a maximum of 10 minutes with the use of a cane; she can lift the weight of a coffee cup; and she can sit continuously for a maximum of one to two hours. (Tr. 506). Brown indicated that she has a history of bed sores because she often has to lie down in bed for a prolonged period of time. (Tr. 507).

As for household activities, Brown assists her children with their homework, instructs them regarding meal preparation, and folds the laundry depending on her daily mood. (*Id.*). She indicated that she has "bad days" four to five times a week and "good days" two to three times a week. (Tr. 508).

During her attorney's direct examination, Brown indicated that her right leg pain is most severe in her knee and thigh. (Tr. 509). She described the pain as "harsh," "throbbing," and constant. (Tr. 510). She takes pain medication every three hours, and stated that she is most confortable when she is lying on her side. (Tr. 510-11). She also recounted that she suffers from pain in her left arm and knee, both of which she claims were broken at some point. (*Id.*). Brown noted that her medication makes her drowsy and that she sleeps a lot during the day. (Tr. 512). She also has someone assist her at home seven days a week with household chores. (Tr. 513).

### 3. Medical Evidence

The Court has thoroughly reviewed the record, and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

    *4.*  *Vocational Expert's Testimony*

Melody L. Henry testified as an independent vocational expert ("VE"). (Tr. 513-17). As a preliminary matter, the ALJ asked the VE to categorize Brown's past work. (Tr. 513). The VE provided the following classification of Brown's past work (hand packer – medium, unskilled with an SVP of 2, light as performed; cleaner – light, unskilled with an SVP of 2, light as performed; fast food worker – light, unskilled with an SVP of 2, light as performed). (*Id.*). The ALJ then asked the VE several hypotheticals, which were progressively more restrictive. (Tr. 514-16). First, the ALJ asked the VE to imagine a claimant of Brown's age, education, and work experience, who is limited to light, unskilled work; standing for three hours/sitting for four hours in a typical workday; requires a clean working environment; mild limitations in concentration, persistence, and pace; and would be five percent off-task in a typical workday. (Tr. 514). The VE testified that the hypothetical individual would be unable to perform Brown's past relevant work, but could potentially perform her past work as a hand packer at the light level; a reduced range of assembly positions due to lifting requirements (3,200 jobs regionally); a reduced range of production inspector position due to the duration of standing time (1,100 jobs regionally); and a reduced range of office machine operator positions (1,450 jobs regionally). (Tr. 514-15). The ALJ then inquired as to the availability of sedentary level jobs for an individual with the above limitations, but allowing for the use of a cane for balance while walking or standing. (Tr. 515). The VE responded that such an individual could work as a hand packer (1,250 jobs regionally); visual inspector (2,175 jobs regionally); and bench assembler (2,400 jobs regionally). (*Id.*). The ALJ then asked whether the hypothetical individual would be able to go off-task and lie down periodically throughout the day for a total of two hours out of an eight-hour workday. (Tr. 515-16). With this limitation, the VE testified that the hypothetical individual would not be able to

perform any of the above sedentary work level jobs. (Tr. 516).

Upon examination from Brown's attorney, the VE attested that the hypothetical individual would be precluded from work if she required a sit/stand option at will and use of a cane for support. (*Id.*). The VE further testified that such an individual would be precluded from all work if she were off-task for more than 15 percent of the workday or absent from work for two or more days a month. (Tr. 516-17).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Brown is not disabled under the Act. At Step One, the ALJ found that Brown had not engaged in substantial gainful activity from July 2007 through January 2012 or at any time after December 2012. (Tr. 474). At Step Two, the ALJ found that Brown has the severe impairments of degenerative changes in the spine, osteoarthritis in the right knee, asthma, obesity, and hypertension. (*Id.*). At Step Three, the ALJ found that Brown's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 476). The ALJ then assessed Brown's RFC, concluding that she is capable of performing sedentary work with the following limitations: work must be performed in a clean environment, ability to use a cane for support and balance when walking or standing, off-task for up to five percent of a typical workday. (Tr. 476-85).

At Step Four, the ALJ determined that Brown is unable to perform any past relevant work. (Tr. 485). At Step Five, based in part on the VE's testimony, the ALJ concluded that Brown is capable of performing a significant number of jobs that exist in the national economy. (Tr. 485-86). As a result, the ALJ concluded that Brown is not disabled under the Act. (Tr. 486).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Brown v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v.*

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

Brown treated with Dr. Mary Petty, M.D. from at least February 2010 through September 2011, and the record contains approximately ten pages of Dr. Petty's handwritten treatment notes. (Tr. 1077-87). During her course of treating Brown, Dr. Petty prescribed various drugs, including (among others) Soma, Xanax and Vicodin, and also prescribed Brown a cane and a specific type of walker. (Tr. 1098-1100). Also in the evidentiary record is a medical opinion issued by Dr. Petty regarding Brown's mental and physical limitations. Dr. Petty opined that Brown is moderately limited in her ability to: understand, remember and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 1088-89). Similarly, Dr. Petty opined that Brown suffered from a "substantial loss" of ability to: (1) make judgments commensurate with the functions of unskilled work; (2) respond appropriately to supervision; and (3) deal with changes in a routine work setting.[1] (Tr. 1090). As to her relevant physical limitations, Dr. Petty opined

---

[1] The instructions on the form completed by Dr. Brown instructed her that pursuant to the applicable Social Security Rulings and POMS, "a 'substantial loss' of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week []), will severely limit or substantially erode the unskilled occupational base and would warrant or justify a finding of disability." (Tr. 1090).

10

that Brown could: (1) sit no more than 4 hours total per day (and no more than 1 hour at a time); (2) walk no more than 3 hours per day; and (3) manipulate objects with her arms/hands no more than two hours per day. (Tr. 1092-93). Dr. Petty provided two diagnoses "resulting in the above limitations," but the diagnoses are fairly illegible. (Tr. 1093).

The above limitations determined by Dr. Petty are far more restrictive than the ones imposed by the ALJ. Although the ALJ reviewed Dr. Petty's treatment records, she ultimately afforded "no weight" to the mental limitations she imposed because "Dr. Petty's treatment notes are focused almost solely on [Brown's] physical complaints and there is no evidence of any objective abnormal mental findings." (Tr. 482). The ALJ gave "little weight" to Dr. Petty's opinion regarding Brown's physical limitations because "[the doctor] did not report any objective findings to support her opinion that the claimant is unable to sit for more than one hour or stand for more than 30 minutes at a time nor are there any objective findings indicating a limited ability to perform fine finger manipulation." (Tr. 481-82).

The problem with the ALJ's analysis of the weight given to these opinions is that she also noted (accurately) that "Dr. Petty's progress notes are largely illegible, but document bi-monthly treatment for multiple impairments through at least September 2011 [] along with prescribing medication in January and February 2012." (Tr. 481-82). In other words, despite not being able to read Dr. Petty's treatment notes, the ALJ affirmatively concluded that Dr. Petty did not base her opinions on any objective findings. Brown argues that the ALJ erred by drawing this conclusion without re-contacting Dr. Petty. (Doc. #13 at 18-21). The Court agrees.[2]

---

[2] In addition to this argument, Brown contends that: (1) the ALJ did not comply with the Appeals Council's remand order when she afforded "very little weight" to the opinion of treating physician Promad Raval, M.D., on the ground that it was unsupported by objective medical evidence (Doc. #13 at 12-18), and (2) the ALJ's RFC assessment is not supported by substantial evidence because it is not consistent with any of the medical opinions in the record. (*Id.* at 21-

11

Social Security Ruling ("SSR") 96-5p provides as follows:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 SSR LEXIS 2, at *16-17 (Jul. 2, 1996). Thus, an ALJ must re-contact a treating physician who provides an opinion on the issue of disability when two criteria are met: (1) "the evidence does not support a treating source's opinion," and (2) "the adjudicator cannot ascertain the basis of the opinion from the record." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010) (quoting SSR 96-5p, 1996 SSR LEXIS 2, at *16). SSR 96-5p specifically defines "medical opinions" as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p, 1996 SSR LEXIS 2, at *4 (internal quotations omitted). Courts have specifically drawn a distinction between a doctor's notes for purposes of treatment and his ultimate opinion concerning an individual's ability to work. *See, e.g., Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008).

In *Mohssen v. Comm'r of Soc. Sec.*, No. 12-14501, 2013 U.S. Dist. LEXIS 165782 (E.D. Mich. Oct. 28, 2013), this Court addressed an argument similar to the one Brown makes here, but with some important factual distinctions. There, the ALJ reviewed nearly a year's worth of handwritten treatment notes from Mohssen's primary care physician and concluded that they

---

24). Because this Court concludes that the ALJ erred by failing to re-contact Dr. Petty to clarify her treatment notes, however, and recommends that this matter be remanded to the Commissioner to obtain such clarification, it need not consider these additional issues in detail at this time. Nevertheless, on remand, the ALJ should consider Brown's arguments in light of the full evidentiary record (including any new evidence obtained from Dr. Petty).

were "largely illegible and of limited probative value." *Id.* at \*24. Like Brown, Mohssen asserted that the ALJ violated SSR 96-5p by discounting the treatment notes without re-contacting the treating physician. *Id.* But the Court rejected this argument on two grounds. First, the Court was able to discern that the treatment notes "appear[ed] to contain basic clinical findings (Mohssen's weight, blood pressure, pulse, temperature) and his subjective complaints (ranging from a runny nose to hip and thigh pain), not an opinion on Mohssen's functional limitations." *Id.* at \*26. Second, the ALJ reviewed and credited a typewritten summary of the treating physician's medical findings, which, as the Court determined, did not contain any "medical opinion." *Id.* at \*28.

The facts of this case are distinguishable. Unlike in *Mohssen*, Dr. Petty's treatment notes are completely illegible so that the Court cannot even attempt an educated guess as to whether or how well they support her medical opinion. And there is no benefit of a typewritten summary to otherwise gauge the notes' import.

The Court's holding in *Andersen v. Comm'r of Soc. Sec.*, No. 11-15636, 2012 U.S. Dist. LEXIS 150466 (E.D. Mich. Sep. 18, 2012), is also distinguishable from the present facts. In *Andersen*, the claimant argued that the ALJ should have re-contacted one of his treating physicians after the ALJ observed that "the majority" of the treating physician's notes were illegible. *Id.* at \*32. Nonetheless, the ALJ was able to evaluate most of the treatment notes from the insured period and determine that they not only contradicted the other objective medical evidence, but that the doctor's ultimate finding of disability lacked an objective basis in the record. *Id.* at \*36. Accordingly, the Court ruled that the ALJ "was not required to recontact [the treating physician] in order to render her decision" since the ALJ was able to read the treatment notes and conclude that they "d[id] not support [the treating physician's] opinion of disability."

13

*Id.* at *37.

Here, Dr. Petty's treatment notes are significantly more difficult to decipher. The Court notes that Dr. Petty appears to have treated Brown for a breast cyst, hypertension, knee and lumbar issues, and some level of mental health problems, and the ALJ recognized that "Dr. Petty's progress notes … document bi-monthly treatment for multiple impairments through at least September 2011…" (Tr. 481-82, 1049, 1085-86). At least some of Dr. Petty's notes appear to indicate, through the use of the "+" symbol, that Brown had positive test results on some type of objective test, but the verbiage next to those symbols is almost always illegible. In sum, the treatment notes show that Brown was being treated for "multiple impairments," but they do not lend themselves to any kind of meaningful interpretation that would shed light on the objective medical evidence Dr. Petty may have considered in articulating her RFC assessment, and how she interpreted this evidence.

Under these circumstances, and considering the treating relationship between Brown and Dr. Petty, the number and types of prescriptions written for Brown by Dr. Petty, and the fact that another of Brown's doctors – Dr. Raval – imposed limitations more consistent with those imposed by Dr. Petty than the ALJ, both of the SSR 96-5p criteria have been met since the ALJ concluded that: (1) the objective medical evidence in the record does not support Dr. Petty's exertional RFC assessment, and (2) she could not "ascertain the basis of the opinion from the record." *Ferguson*, 628 F.3d at 273 (quoting SSR 96-5p, 1996 SSR LEXIS 2, at *16). As a result, the case should be remanded to the Commissioner so that Dr. Petty can clarify the treatment notes forming the basis of her RFC assessment.[3] *See Turnbow v. Astrue*, No. 09-14989,

---

[3] Pursuant to Social Security Administration Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-1-55(D)(6), Brown requests that this matter be assigned to another ALJ in the event the case is remanded to the Commissioner. (Doc. #13 at 24-25). HALLEX I-2-1-55(D)(6)

14

2011 U.S. Dist. LEXIS 53314, at *17-18 (E.D. Mich. Apr. 26, 2011) (remanding to the Commissioner where the ALJ failed to re-contact treating physician whose notes were "largely illegible").

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [16] be DENIED, Brown's motion for summary judgment [13] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED back to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: July 13, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir.1991); *United*

---

provides that, "[Appeals Council] remands are assigned to the same ALJ who issued the decision or dismissal unless: the case was previously assigned to that ALJ on a prior remand from the [Appeals Council] and the ALJ's decision or dismissal after remand is the subject of the new [Appeals Council] remand . . ." *See* HALLEX I-4-3-1(C) (stating that the Appeals Council will subsequently issue its own remand order after a case is remanded to the Commissioner by a federal district court). Since the procedural posture of this case seems to fit squarely within HALLEX I-2-1-55(D)(6), and the Commissioner does not oppose Brown's request (Doc. #16 at 20), the Court further recommends that the matter be reassigned to a different ALJ upon remand.

*States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2016.

    s/Eddrey O. Butts
    EDDREY O. BUTTS
    Case Manager